UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No.: 1:25-CV-00209

STARBURST DATA, INC.,

     PLAINTIFF,

v.

JOSHUA ROBERT HEWITT,

     DEFENDANT.

**BRIEF IN SUPPORT OF**
**MOTION TO DISMISS**

## STATEMENT OF NATURE OF THE CASE

In the corporate world, accountability often flows downhill. When systems fail and losses mount, the search begins not for a solution, but for someone expendable to shoulder the blame: someone like Joshua R. Hewitt. Hewitt worked in the internet technology department as a systems engineer for Starburst Data, Inc. When Starburst discovered significant gaps in its inventory management practices in 2024 it had two choices: acknowledge its organizational failures or blame someone with dirt on their shoes. Management chose Hewitt, but not because he stole over a million dollars in laptops or equipment, but because he admitted to using the company UPS

1

account to sell a few decommissioned laptops on eBay he mistakenly – but reasonably – believed were abandoned property.

Hewitt is entitled to dismissal of this complaint under Fed. R. Civ. P. 12(b)(1) for failure to establish an amount in controversy of $75,000 because Starburst's damages calculations improperly inflate the value of its losses, but when age and model is considered, the actual value does not exceed $75,000. Should the Court find Starburst has met the amount in controversy, counts I, II and III should be dismissed pursuant to Fed. R. Civ. P.12(b)(6) for failure to state a claim. Starburst lacks ownership of the laptops and equipment and therefore cannot claim conversion, meriting dismissal of count I (conversion). Counts II (breach of fiduciary duty) and III (constructive fraud) each fail because Hewitt never owed a fiduciary duty to Starburst, and the conversion claim is predicated upon a finding of a fiduciary duty.

For these reasons, Hewitt requests dismissal of the complaint.

## QUESTIONS PRESENTED:

(1) Whether Starburst, Inc.'s damages allegations are sufficient to meet the $75,000 amount in controversy threshold to confer subject matter jurisdiction over the case.

(2) Whether Starburst, Inc. plausibly alleged conversion against Mr. Hewitt.

(3)    Whether Starburst, Inc. plausibly alleged breach of fiduciary duty against Mr. Hewitt.

(4)    Whether Starburst, Inc. plausibly alleged constructive fraud against Mr. Hewitt.

## STATEMENT OF RELEVANT FACTS

### *Hewitt's Role and Employment*

Starburst Data, Inc. was founded in 2017 as a data analytics startup.[1] During Hewitt's employment from December 2021 to October 2024, Hewitt served as Starburst's primary contact with hardware and software vendors and was responsible for managing the company's computer equipment and related inventory.[2] Hewitt worked under the supervision of Larry Bullins and others,[3] and one of Hewitt's primary duties included inventorying decommissioned laptops and ordering products and devices.[4]

### *Starburst's Equipment Management and Storage Practices*

During the relevant period, Starburst's equipment management practices included shipping decommissioned laptops directly to Hewitt's apartment for storage at varying intervals of time.[5] As Starburst's designated

---

[1] Compl. ¶ 7.
[2] Compl. ¶¶ 8-10.
[3] Compl. ¶ 15.
[4] Compl. ¶¶ 1, 9-13.
[5] Compl. ¶¶ 8, 10, 45.

3

IT equipment manager, Hewitt stored dozens of decommissioned laptops at his own house as part of Starburst's equipment management process.[6] At some point Starburst began using ExpoIT, an asset decommissioning company.[7] Starburst relied on Hewitt to retain the laptops for indefinite periods of time prior to shipping them to ExpoIT.[8] Starburst's arrangement with ExpoIT involved ExpoIT issuing credits ranging from $400 to $800 per decommissioned laptop.[9]

### *Hewitt's Actions and Starburst's Response*

Hewitt acknowledges that he made an error in judgment when he disposed of laptops he believed had been abandoned by Starburst, selling some on eBay.[10] When confronted with the allegations of theft, fraud and breach of fiduciary duty, Hewitt immediately returned eleven laptops consisting of six MacBook Airs (11 inch), four MacBook Pros (16 inch), and one MacBook Pro (14 inch).[11] Despite Hewitt's cooperation, Starburst characterized Hewitt's mistake as intentional misconduct, bringing claims for conversion, fraud, breach of fiduciary duty, larceny and unjust enrichment.

---

[6] *Id.*
[7] Compl. ¶ 13.
[8] *Id.*
[9] Compl. ¶ 46.
[10] Compl. ¶¶ 34, 51.
[11] *Id.*; *see* Declaration, Ex. A.

4

***Starburst's Claimed Damages***

Starburst claimed damages ranging from $475,000 to $1,425,000,[12] alleging that 106 laptops are missing and valuing each laptop at between $2,000 to $5,000.[13] After Hewitt's return of eleven laptops Starburst alleges that 95 laptops remain missing.[14] Additionally, Starburst alleges that $31,000 in Amazon purchases are unaccounted for and that Hewitt charged $7,000 to the UPS account for unauthorized shipments.[15]

**ARGUMENT**

**I.   The Court Lacks Subject Matter Jurisdiction Because Starburst's Alleged Damages Fail to Establish the $75,000 Jurisdictional Threshold Based On the Factual Record.**

Federal diversity jurisdiction requires that the amount in controversy exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). "Courts generally determine the amount in controversy by reference to the plaintiff's complaint." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010). But "a plaintiff whose complaint alleges a sufficient amount in controversy cannot secure jurisdiction 'if, from the proofs, the court is satisfied to a [legal] certainty that the plaintiff never was entitled to recover that amount.'" *Id.*

---

[12] Compl. ¶ 53.
[13] Compl. ¶ 47.
[14] Compl. ¶ 52.
[15] Compl. ¶¶ 48, 49.

5

(quoting *Saint Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).

"When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff." *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982). Once challenged, "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Coleman v. Astrue*, No. 4:09-CV-32-FL, 2010 U.S. Dist. LEXIS 94237, at *8 (E.D.N.C. Sep. 9, 2010) (quoting *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "The district court should grant the Rule 12(b)(1) motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Id.*

Here, Starburst alleges Hewitt stole approximately 106 laptops [16] comprised of 46 confirmed missing by serial number[17] plus 60 additional laptops shipped to his home. While Starburst claims laptops were valued between $2,000-$5,000 each and cost $5,000-$10,000 to replace early,[18] the

---

[16] Compl. ¶ 38.
[17] Compl. ¶ 44.
[18] Compl. ¶¶ 44, 47.

6

laptops Hewitt returned provide evidence of the equipment's actual value near the time of the alleged conversion.[19]

Using reverse serial number search through Apple.com and everymac.com, similar used laptops have secondary market values of only $257-$443 for MacBook Air models and $721-$1,173 for MacBook Pro models.[20] If the remaining 95 laptops mirror this returned sample and consist primarily of MacBook Air models, as here, their maximum reasonable fair market value ranges from only $24,415 to $42,085 ($257-$443 × 95 laptops). For MacBook Pro models, that range is from $68,495 to $111,435. Depending on the composition of MacBook Air and MacBook Pro models, and other metrics, the jurisdictional threshold could be well below $75,000.[21]

Alternatively, even accepting for purposes of damages Starburst's practice of receiving $400 - $800 in credits for returned laptops from ExpoIT[22] this yields only $38,000 - $76,000 for 95 laptops, with even the median range failing to meet the jurisdictional threshold when combined with other speculative damages (gaming equipment, subscriptions, etc.).[23] Starburst's remaining itemized damages total only $38,000, consisting of $31,000 in

---

[19] Compl. ¶ 45.
[20] *See* Declaration, Ex. c.
[21]  This is not an exclusive range, but rather a sample based on the most common year and model of laptops returned by Hewitt, which consisted mainly of six MacBook Air 13 inch. (2021) and three MacBook Pro 16 inch. (2021) computers.
[22] Compl. ¶ 46
[23] Compl. ¶ 45.

7

alleged fraudulent Amazon purchases[24] and $7,000 in unauthorized UPS charges. Starburst provides no supporting documentation for these figures.

For the Amazon purchases allegedly "unaccounted for," Starburst could easily produce records showing which specific items remain in Hewitt's possession versus those used for legitimate business purposes, since it should have an accounting of its own business assets. Similarly, the $7,000 in UPS charges could be substantiated by invoices tied to Hewitt's name or employee identification. Without such basic documentation, these claimed damages are merely speculative allegations. Combined with the fair market value of the laptops, even accepting Starburst's unsupported damage calculations, the maximum provable amount in controversy is approximately $80,085—just above the threshold, but this is based on Starburst's *highest* estimates for its unsubstantiated claims. The actual fair market value evidence suggests damages well below $75,000, which is doubly relevant as Starburst has claimed conversion damages.[25]

Starburst's inability to provide even a consistent damage figure – offering instead a range that varies by nearly $1 million – demonstrates the

---

[24] Compl. ¶ 48.
[25] *See Heaton-Sides v. Snipes*, 233 N.C. App. 1, 5, 755 S.E.2d 648, 651-52 (2014) ("Once a party has stated a claim for conversion, the party must present evidence that will provide a basis for determining damages.").

speculative nature of its claims. For these reasons, Starburst must substantiate its damage figures or the Court must dismiss this suit for lack of subject matter jurisdiction.

## II.   PLAINTIFF FAILS TO STATE A CLAIM UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

### A. STANDARD OF REVIEW

"In a ruling on a motion to dismiss under Rule 12(b)(6), the Court's inquiry is 'whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Willard v. Barger*, 2019 NCBC LEXIS 33, *3 (N.C. Super. Ct. Mar. 29, 2019). "The Court will not grant a motion to dismiss 'unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.'" *Id.* (citing *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970)). "Therefore,  dismissal of a claim pursuant to Rule 12(b)(6)  is only proper '(1) when the complaint on its face reveals that no law supports [the] claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim.'" *Id.* (citing *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985)).

9

"The Court construes the allegations in the pleading 'in the light most favorable to the non-moving party.'" *Id.* (citing *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5, 802 S.E.2d 888, 891 (2017)). "The Court is not, however, required 'to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Id.* at *3-4 (citing *Good Hope Hosp., Inc. v. N.C. HHS, Div. of Facility Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005)).

## B. The Conversion Claim Fails as to the Laptops in ExpoIT's Possession Because Starburst Relinquished Ownership

The North Carolina Supreme Court defines conversion as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.*" Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (quoting *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439 (1956). "The claim requires a plaintiff to prove 'both ownership in himself and the wrongful possession or conversion of the property by the defendant.'" *Chi v. Marina USA Investco LLC*, 2024 NCBC 59, 45 (N.C. Super. Ct. Sep. 10, 2024)(quoting *Gadson v. Toney*, 69 N.C. App. 244, 246, 316 S.E.2d 320 (1984)). If the complaint pleads that the plaintiff does not own the property in question, the

Case 1:25-cv-00209-TDS-JLW    Document 13    Filed 06/20/25    Page 10 of 19

conversion claim must be dismissed. *Willard v. Barger*, 2019 NCBC LEXIS 33, at *4.

Starburst pleads itself out of a viable conversion claim by asserting contradictory ownership positions. Starburst simultaneously claims that: (1) it transferred ownership of the laptops to ExpoIT in exchange for disposal credits valued at $400-$800, and (2) Hewitt converted the laptops from Starburst by requesting them from ExpoIT.

In *Willard*, the estate of a deceased individual claimed conversion of a 2014 Subaru while simultaneously pleading that the Subaru was owned by another entity. The court dismissed the conversion claim, holding that the estate "has no direct ownership interest in the 2014 Subaru, and without ownership in the Estate, the Estate has no legal right to recover." *Willard v. Barger*, 2019 NCBC LEXIS, at *6. Here, Starburst pleaded that it transferred the laptops to ExpoIT in return for valuable consideration (disposal credits). By pleading this transfer for value, Starburst admits it no longer owns the laptops that were in ExpoIT's possession when Hewitt requested them. Therefore, it was legally impossible for Hewitt convert the ExpoIT held laptops. Starburst cannot claim Hewitt converted laptops that Starburst itself pleads it no longer owned.

11

Because Starburst has pleaded that it transferred ownership of the laptops to ExpoIT in exchange for disposal credits, it lacks the requisite ownership to maintain a conversion claim against Hewitt for those same laptops. Accordingly, the conversion claim should be dismissed as to any laptops that were in ExpoIT's possession, just as the Estate's claim was dismissed in *Willard* for lack of direct ownership.

### C. Hewitt Could Not Owe a Fiduciary Duty to Starburst Because He Was Not in a Position of Influence and Control Over Starburst

"A claim for breach of fiduciary duty requires the existence of a fiduciary duty." *Artistic Southern Inc. v. Lund,* 2015 NCBC 109, 63 (N.C. Super. Ct. Dec. 9, 2015). "Generally, an employee does not owe a fiduciary duty to his employer because the relationship is not considered confidential*.*" *Id.* (citing *Dalton v. Camp*, 353 N.C. 647, 654, 548 S.E.2d 704, 709 (2001)) "Even when an employee is entrusted with substantial managerial authority, a fiduciary relationship will not exist absent evidence that such authority led to the employer being subjugated to the 'improper influences or domination of [its] employee.'" *Id.* (quoting *Battleground Veterinary Hosp., P.C. v. McGeough*, 2007 NCBC LEXIS 33, at *16 (N.C. Super. Ct. Oct. 19, 2007)).

"North Carolina courts have only found the special circumstances necessary for a fiduciary relationship between an employer and employee 'when one party figuratively holds all the cards' such as 'all the financial

12

power or technical information.'" *Id.* (citing *Kaplan v. O.K. Techs., LLC*, 196 N.C. App. 469, 475, 675 S.E.2d 133, 138 (2009)). Otherwise, allegations that an employee breached a fiduciary duty to their employer are generally dismissed for lack of a showing of sufficient dominion and influence over the employer. *See, e.g., Dalton,* 353 N.C. at 652 (affirming dismissal of breach of fiduciary duty claim against production manager of a publishing business); *Austin Maint. & Constr., Inc. v. Crowder Constr. Co.*, 224 N.C. App. 401, 417, 742 S.E.2d 535, 546 (2012) (affirming summary judgment on breach of fiduciary duty claim against a foreman of a four-man construction crew for $2 million facility); *Artistic Southern Inc. v. Lund*, 2015 NCBC 109, at *65 (dismissing breach of fiduciary duty claim against outside sales representative); *DSM Dyneema, LLC v. Thagard*, 2015 NCBC LEXIS 50, *23 (N.C. Super. Ct. May 12, 2015) (dismissing breach of fiduciary duty claim against application manager, chief scientist and product leader). "Even when an employee is entrusted with substantial managerial authority, a fiduciary relationship will not exist absent evidence that such authority led to the employer being subjugated to the 'improper influences or domination of [its] employee.'" *Id.* at 20.

Starburst has not articulated that Hewitt held all of the cards or exerted the type of dominion and control necessary to sustain a breach of fiduciary duty claim. Hewitt worked in the internet technology department

13

under supervision from managers. Hewitt's primary duties were to inventory decommissioned laptops, place orders for products and devices, and diagnose and repair internet technology issues that arose in the ordinary course of business. Starburst alleges that these job functions constitute "special managerial, administrative … job functions, such that Starburst was totally dependent on Hewitt in connection with the performance of those functions,"[26] but fails to provide any explanation as to how Hewitt's role uniquely positioned him to exert dominion and influence over Starburst. This is not sufficient for a breach of fiduciary duty claim, *even if* the Court were to find special or substantial managerial authority.

Hewitt undoubtedly was less influential and had narrower access to Starburst internal functions than the employees in the cases cited above. For example:

- In *Dalton*, a production manager for a publishing business oversaw business operations, ordered supplies, managed budgetary constraints and met production deadlines. *Dalton v. Camp*, 353 N.C. 647 at 652.

- In *Austin,* a foreman managed a four-man crew that focused on construction maintenance services for a facility that produced $2

---

[26] Compl. ¶ 60.

million of revenue. *Austin Maint. & Constr., Inc. v. Crowder Constr. Co.*, 224 N.C. App. 401 at 409-10.

- In *Artistic Southern,* an outside sales representative accessed customers to divert customer payments to himself and accessed confidential information, trade secrets, and goodwill to divert future work from his employer to an entity he incorporated. *Artistic Southern Inc. v. Lund*, 2015 NCBC 109, at *64.

- In *DSM Dyneema*, the chief scientist, application manager and project lead for development of a new helmet and body armor system had access to confidential and proprietary information and trade secrets. *DSM Dyneema, LLC v. Thagard*, 2015 NCBC LEXIS 50, at *3-4.

In each case, the court found the employees lacked the level of dominion and control necessary to find that they essentially held "all the cards" and dismissed the breach of fiduciary duty claims. Most courts find such functions as ordering partes and supplies, as Hewitt was responsible for here, as merely serving to "define the nature of virtually all employer-employee relationships…." *Id.* at *22.

Starburst's only saving grace is the *Sara Lee Corp. v. Carter* case, which may create a limited exception to the general rule that an employee who is an agent for its employer can be found to have a sufficiently close

15

confidential and trusted relationship with its employer to owe a fiduciary duty. 129 N.C. App. 464, 469, 500 S.E.2d 732 (1998). *Sara Lee* is distinguishable, though, in that the employee-agent there was a high-level officer and purchasing agent for the company but "acted in the double capacity of both purchasing agent and vendor" and engaged in self-dealing by contracting with his own company at inflated prices. *Id.* at 471. This is inapplicable to Hewitt and Starburst, as Hewitt reports to a supervisor, did not engage in self-dealing with his own company and did not have sole authority to make purchasing decisions.

This Court should reach a similar conclusion with respect to Hewitt, as the only facts truly before it that show influence and dominion are that Hewitt was one of the people responsible for ordering Starburst's computer equipment. Accordingly, the Court should dismiss Starburst's breach of fiduciary duty claim.

D. **The Constructive Fraud Claim Should Be Dismissed Because Hewitt Did Not Owe a Fiduciary Duty to Starburst**

"Under North Carolina law, the pleading of a constructive fraud claim is essentially predicated on the existence of a fiduciary duty." *Dean v. Dean*, No. 3:18CV00213-FDW-DLH, 2018 U.S. Dist. LEXIS 160021, at *7 (W.D.N.C. Sep. 19, 2018); *see also Fairchild v. Fairchild*, No. 3:18CV623-GCM, 2020

16

U.S. Dist. LEXIS 165995, at *6 (W.D.N.C. Sep. 10, 2020) ("[a] claim for constructive fraud requires the existence of a fiduciary duty.").

North Carolina courts consistently dismiss constructive fraud claims at the 12(b)(6) pleading stage when there is no position of trust and confidence and particularly where the court has also dismissed a claim for breach of fiduciary duty. *See Caper Corp. v. Wells Fargo Bank, N.A.*, 578 F. App'x 276, 287 (4th Cir. 2014) (holding "that the district court properly dismissed Appellant's breach of fiduciary duty and constructive fraud claims pursuant to Fed. R. Civ. P. 12(b)(6)."); *Barchiesi v. Charlotte Sch. of Law, LLC*, No. 3:16-CV-00861, 2017 U.S. Dist. LEXIS 131107, at *11-12 (W.D.N.C. Aug. 17, 2017) ("As the Court has determined that Defendants do not owe Plaintiffs a fiduciary duty,  Plaintiffs' claim for constructive fraud must likewise be dismissed."). When a plaintiff fails to make a plausible showing that a relationship of trust and confidence existed to assert a fiduciary duty, "he has also not plausibly pled a claim for constructive fraud." *Dean v. Dean,* 2018 U.S. Dist. LEXIS 160021, at *7 (quoting *Landmar, LLC v. Wells Fargo Bank, N.A.*, 978 F. Supp. 2d 552, 564 (W.D.N.C. 2013); ("There being no fiduciary duty between these parties, plaintiffs have failed to state a claim for constructive fraud.")

Here, Starburst's pleading of the constructive fraud claim fails to demonstrate a fiduciary relationship between it and Hewitt. For the reasons

17

set forth *supra* at section II (C), Starburst did not owe a fiduciary duty to Starburst, which also means that there was no relationship of trust and confidence between Hewitt and Starburst to support a constructive fraud claim. Accordingly, the Court should dismiss Starburst's constructive fraud claim.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant Hewitt's Motion to Dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), or alternatively, dismiss Counts I, II, and III for failure to state a claim under Rule 12(b)(6).

Dated:  June 20, 2025

**J.C. WHITE LAW GROUP PLLC**

/s/ Zechariah C. Etheridge
James C. White, N.C. Bar # 31859
Zechariah C. Etheridge, N.C. Bar # 59494
100 Europa Drive, Suite 401
Chapel Hill, NC 27517
jwhite@jcwhitelaw.com
zetheridge@jcwhitelaw.com
(919) 246-4676
(919) 246-9113 fax

*Attorneys for Joshua Robert Hewitt*

18

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3**

Pursuant to Rule 7.3(d) of the Local Rules of the United States District Court for the Middle District of North Carolina, I hereby certify that this document complies with LR 7.3(d) because it contains less than 6,250 words, exclusive of the caption, signature blocks, certificates, cover page, and indices. I further certify that this document was prepared using Microsoft Word and uses the 13-point proportional font Century Schoolbook.

Dated: June 20, 2025

/s/ Zechariah C. Etheridge

Case 1:25-cv-00209-TDS-JLW    Document 13    Filed 06/20/25    Page 19 of 19